UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES OF AMERICA,

   -against-                                     **MEMORANDUM & ORDER**
                                                  17-CR-296 (PKC)

SHAROD LIBURD,

               Defendant.
---------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

Before the Court is Defendant Sharod Liburd's ("Defendant") motion to suppress the evidence seized from his Facebook account. For the reasons stated herein, Defendant's motion is denied.

### BACKGROUND

The Court assumes the parties' familiarity with the facts in this case and thus recites them only to the extent relevant to the Court's analysis.

On May 24, 2017, Defendant Liburd and co-defendants Tysheen Cooper and Gabriale Herbert were arrested and charged, via complaint, with Hobbs Act robbery and Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951, and brandishing a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Dkt. 1.) On November 9, 2017, the grand jury returned a superseding indictment (the "Superseding Indictment"), which added Michael Liburd and Maurice Washington as defendants and added nine new charges relating to a racketeering conspiracy by members of the "West End Enterprise".[1] (Dkt. 32; Def.'s Br., Dkt. 73, at 1-2.) Although not charged with any of the new crimes, the Superseding Indictment names

---

[1] As alleged in the Superseding Indictment, the West End Enterprise is a gang composed of individuals residing in and around certain apartment complexes located in Coney Island. (Govt. Br., Dkt. 76, at 2.)

Defendant as a member of the West End Enterprise. (Govt. Br., Dkt. 76, at 2 (citing Dkt. 32, ¶ 5).)

On December 14, 2017, the Honorable Robert M. Levy issued a search warrant for information associated with Defendant's Facebook account (the "Facebook Warrant"). (Dkt. 76-1.) The warrant application was based on the affidavit of Special Agent Gregory Kies of the Federal Bureau of Investigation ("FBI"). (*Id.*) On February 22, 2018, the government provided Defendant's counsel with a copy of the data received from Facebook and "afforded counsel the opportunity to review the material and request redactions of particularly sensitive or private information, or information that could result in a security risk, before the same material was disclosed to the other defendants in the case[.]" (Govt. Br., at 5.) On March 15, 2018, defense counsel filed a letter objecting to this procedure. (Dkt. 69.) On March 20, 2018, the Court held a conference on the matter. Although defense counsel's initial objection was to the burden of having to review the voluminous Facebook records, she further suggested that the search warrant was overly broad and that the affidavit upon which it was based lacked probable cause. The Court accordingly set a briefing schedule for Defendant's motion to suppress pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). This motion followed. (Dkt. 73.) On May 18, 2018, the Court held a *Franks* hearing[2] and denied Defendant's motion on the record.

**DISCUSSION**

**A. "Bootstrapping" Claim**

First, Defendant argues that the government filed the Superseding Indictment "to bootstrap the [search] warrant into relevance." (Def.'s Br., at 7.) Specifically, Defendant asserts that the government purposely included Defendant in the Superseding Indictment "as a 'member' of the

---

[2] Despite requesting a *Franks* hearing, defense counsel objected to the procedure at the hearing, and asked only four questions of the only witness, Special Agent Kies.

2

alleged racketeering enterprise", even though he was not alleged to "have committed any crime or act in furtherance of the alleged racketeering enterprise or conspiracy", in order to "transform[] the [Facebook Warrant] into a self-justifying fishing expedition in search of a racketeering charge." (*Id.*)

The Court rejects this argument. Contrary to Defendant's assertions, the fact that he was indicted by the grand jury as a member of the West End Enterprise before the government sought the Facebook Warrant bolsters the finding of probable cause to search for evidence about the existence of the West End Enterprise, Defendant's membership in, or association with it, and any crimes that may have been committed by the enterprise. (Affidavit of Special Agent Gregory Kies ("Kies Aff."), Dkt. 76-1, at ¶¶ 5-6.) Based on the Superseding Indictment, the Magistrate Judge was aware that the grand jury found probable cause to believe that Defendant was a member of a criminal enterprise. This is not improper bootstrapping in that the indictment merely served as evidence of Defendant's involvement in a criminal enterprise.

### B. Overbreadth and Particularity

Second, Defendant argues that the Facebook Warrant was overbroad and lacked particularity, constituting "a scorched earth approach [that] is, it should go without having to say, precisely the scourge that the Fourth Amendment to our Constitution aspires to protect against." (Def.'s Br., at 7; *see also id.* at 6 ("The warrant here invites law enforcement to romp through every aspect of Sharod's personal life—as well as the personal lives of anyone he is friends with, in at least some way—and then keep this trove of data without regard to whether the government— let alone a codefendant—should have it.").) The Court rejects these arguments as well.

The Warrants Clause of the Fourth Amendment "was intended as a bulwark against 'the general warrant abhorred by the colonists' and protects against 'a general, exploratory rummaging

in a person's belongings.'" *United States v. Cioffi*, 668 F.Supp.2d 385, 390 (E.D.N.Y. 2009) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). "To achieve its goal, the Warrants Clause requires particularity and forbids overbreadth." *Id*. Of these two standards, "[b]readth deals with the requirement that the scope of the warrant be limited to the probable cause on which the warrant is based." *Id*. (citation and quotation marks omitted). Thus, "the issue is whether there exists probable cause to support the breadth of the search that was authorized." *United States v. Dinero Express, Inc.*, No. 99-CR-975 (SWK), 2000 WL 254012, at *9 (S.D.N.Y. Mar. 6, 2000) (citation and internal quotation marks omitted); *see United States v. Dupree*, 781 F.Supp.2d 115, 154 (E.D.N.Y. 2011). Particularity "is the requirement that the warrant must clearly state what is sought." *Cioffi*, 668 F.Supp.2d at 390 (citation and internal quotation marks omitted). "Particularity" concerns arise "when a warrant's description of the place to be searched or the items to be seized 'is so vague that it fails reasonably to alert executing officers to the limits of their search and seizure authority.'" *United States v. Scully*, 108 F. Supp. 3d 59, 90 (E.D.N.Y. 2015) (quoting *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011)). To satisfy the "particularity" requirement, "[a] warrant must be sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize." *United States v. Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (quotation marks, citation, and alterations omitted).

With respect to particularity, the Second Circuit "[has] not required specific search protocols or minimization undertakings as basic predicates for upholding digital search warrants, and [the Circuit] do[es] not impose any rigid requirements in that regard at this juncture." *United States v. Galpin*, 720 F.3d 436, 451 (2d Cir. 2013). "Courts in this circuit have found warrants that allow a Facebook search limited by reference to an exemplary list of items to be seized and the crime being investigated to be sufficiently particularized." *United States v. Tairod Nathan*

*Webster Pugh*, No. 15-CR-116 (NGG), 2015 WL 9450598, at *26 (E.D.N.Y. Dec. 21, 2015). Here, the Court finds that the government has set forth adequate minimization procedures in Attachment B to the Facebook Warrant. (Kies Aff., Attachment B.) For instance, the Government sought to seize information related to the existence of, and communications among, the West End Enterprise and evidence regarding Hobbs Act robbery and robbery conspiracy. (*Id.*) "This description was sufficiently particular to allow the Government to examine the files it received from Facebook without violating the Fourth Amendment." *United States v. Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012); *see also Pugh*, 2015 WL 9450598, at *26-27 (finding that a Facebook warrant was not a "general search" where it was "narrowly tailored to the aim of the investigation;" namely, determining whether the defendant had attempted to join a terrorist group because "[p]lainly, knowledge regarding who [the defendant] communicated with, and the identities of those individuals, is pertinent to determining if [the defendant] attempted to join [a terrorist organization]").

Additionally, the Court finds that the Facebook Warrant was not overbroad. It is "well-established that a search warrant can properly permit the Government to obtain access to electronic information for purposes of a search even where the probable cause showing does not apply to the entirety of the electronic information that is disclosed to the Government." *In the Matter of a Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled By Google, Inc.*, 33 F. Supp. 3d 386, 393 (S.D.N.Y. 2014), *as amended* (Aug. 7, 2014). Here, because of the nature of digital media searches, it was proper for the search warrant to allow the FBI to search the entire contents of Defendant's Facebook account, once Judge Levy determined that there existed probable cause to believe that evidence relating to Defendant's criminal activity was contained in that account, even if the account also contained

information unrelated to criminal activity. Indeed, in the context of Facebook searches, "courts in this circuit repeatedly have recognized that . . . avoiding the intrusiveness of a search while maintaining its efficacy is largely infeasible." *Pugh*, 2015 WL 9450598, at *27 (E.D.N.Y. Dec. 21, 2015) (collecting cases).

The Facebook Warrant, therefore, was not overly broad or lacking particularity.

### C. *Franks* Violation

Third, and most importantly, Defendant argues that the Kies Affidavit in support of the Facebook Warrant was misleading and omitted material information, thereby warranting suppression of the fruits of the warrant under *Franks*. The Court finds that although the Kies Affidavit omitted relevant information, the errors were not material. Therefore, Defendant's motion to suppress is denied.

To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause [or necessity] finding." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (quoting *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000)). In considering whether an affidavit contains misrepresentations or omissions, the reviewing court "should also supplement the affidavit with any facts that were not in the affidavit but that were proven at the suppression hearing." *United States v. Marley*, No. 16-CR-374 (VEC), 2017 WL 4998199, at *6 (S.D.N.Y. Oct. 31, 2017) (citation omitted); *see also Rajaratnam*, 719 F.3d at 154-56. "The ultimate inquiry is whether, after putting aside erroneous information and [correcting] material omissions, 'there remains a residue of independent and lawful information sufficient to support [a finding of] probable cause [or necessity].'" *Canfield*,

212 F.3d at 718 (*United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985)). "The *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).

To establish probable cause for the Facebook Warrant, Special Agent Kies included examples of "photographs of members and associates of the West End Enterprise and postings reflecting Sharod Liburd's association with the West End Enterprise" that were taken from Sharod Liburd's Facebook account. (Kies Aff., ¶¶ 8, 10, 13, 15, 18, 20, 22, 25.) However, the Kies Affidavit failed to explain that all of the Facebook posts included in the affidavit were only available to Defendant's Facebook "friends" and that the icon seen next to the date in each Facebook post indicated that the post was for "friends only". (Def.'s Br., at 7-8.) Moreover, the affidavit suggested that said Facebook posts were publicly available and thus lawfully obtained by the FBI.

> Paragraph 7 of the Kies Affidavit states,
>
> Law enforcement agents have reviewed the *public* Facebook page of Facebook User ID 100011020757883, with username "Sharod Liburd." The *publicly available* photographs on the *public* Facebook page of Facebook User ID 100011020757883, with username "Sharod Liburd," depict SHAROD LIBURD who was charged in the Superseding Indictment. Law enforcement agents previously have reviewed additional photographs and postings from the Facebook page of username "Sharod Liburd," which also depicted photographs of SHAROD LIBURD who was charged in the Superseding Indictment (the "Sharod Liburd Account").
> . . .
> Footnote: Law enforcement agents did not review the Facebook User ID number at the time they reviewed the additional photos, but based upon the common username ("Sharod Liburd") and the presence of photographs depicting SHAROD LIBURD who was charged in the Superseding Indictment, I believe the Sharod Liburd Account and the Facebook account with User ID 100011020757883 to be the same.

(Kies Aff., ¶¶ 7 & n.1 (emphasis added).) The government argues that "[t]he Affidavit carefully distinguished between" the public and non-public images it reviewed. (Govt. Br., at 4.) As the government explained at the *Franks* hearing, the government received the images of the

7

aforementioned "friends only" Facebook posts from two confidential informants[3] and those Facebook posts had the name "Sharod Liburd" on them, but did not show the account's User ID. The government then cross-referenced the pictures in the "friends only" posts with the publicly available photographs from Defendant's Facebook account (and from which they could get his Facebook User ID) to verify that he was the person in some of the pictures, even if the government could not verify the "friends only" posts themselves.

The distinction between the public and non-public Facebook information was far from clear on the face of the affidavit. The repeated use of the word "public" in the first half of the paragraph, coupled with the muddled attempt to distinguish between the publicly available photographs from "User ID 100011020757883, with username 'Sharod Liburd'"—which the government reviewed—and the photographs from "the Facebook page of username 'Sharod Liburd'"—referring to the "friends only" Facebook posts[4]—could have led Judge Levy to believe that the Facebook posts in the Kies Affidavit were publicly available. However, any misrepresentation or confusion was not intentional—in fact, Special Agent Kies testified at the hearing that he did not know that the icon in the Facebook posts indicated that they were "friends only"—or done with reckless disregard for the truth. Therefore, Defendant's motion to suppress is denied. *See Franks*, 438 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient.").

---

[3] Courts have held that the omission of information about a confidential informant can constitute a material omission under *Franks* because such information "goes directly to the credibility" of the informant. *McColley v. Cty. of Rensselaer,* 740 F.3d 817, 825 (2d Cir. 2014). However, in this case, there is no dispute that the Facebook posts were genuine and that they came from Defendant's Facebook account; therefore, the credibility of the informant would not have been relevant to Judge Levy's analysis of probable cause.

[4] At the *Franks* hearing, Special Agent Kies testified that the "friends only" Facebook posts were provided to the FBI by two confidential informants, whom the government had no reason to believe did not lawfully obtain them.

Even if the Court found that Defendant could meet the first part of the *Franks* analysis, Defendant cannot meet the second. "To determine if misrepresentations or omissions are material, a court corrects the errors [in the affidavit] and then resolves de novo whether the hypothetical corrected affidavit still establishes probable cause." *United States v. Lahey*, 967 F. Supp. 2d 698, 711 (S.D.N.Y. 2013); *see also McColley*, 740 F.3d at 823. In this case, Defendant's claims "fail under the 'corrected affidavit' doctrine because a hypothetical warrant affidavit, deleting the purported misstatements and including the challenged omissions, would not affect the probable cause determination." *Coderre v. City of Wallingford*, 668 F. App'x 399, 400 (2d Cir. 2016). Deleting the misstatements about the public availability of the Facebook posts in the Kies Affidavit and adding in the fact that Special Agent Kies received the Facebook posts from confidential informants—whom he believed had legal access to the relevant posts—would not have affected the probable cause determination in this case. *See Meregildo*, 883 F. Supp. 2d at 525-26 ("The Government viewed [defendant's] Facebook profile through the Facebook account of one of [defendant's] 'friends' who was a cooperating witness. By that means, the Government learned, *inter alia*, that [defendant] posted messages regarding prior acts of violence, threatened new violence to rival gang members, and sought to maintain the loyalties of other alleged members of [defendant's] gang. Access to [defendant's] Facebook profile formed the core of the Government's evidence of probable cause supporting its application for the search warrant. Where Facebook privacy settings allow viewership of postings by 'friends,' the Government may access them through a cooperating witness who is a 'friend' without violating the Fourth Amendment." (citation omitted)).

The Court, therefore, finds that any omission in the Facebook Affidavit does not warrant the suppression of evidence obtained from Defendant's Facebook account.

### D. Stay of Discovery

#### 1. Interlocutory Appeal

In light of the denial of his motion to suppress, Defendant advises that he "intends to pursue a temporary restraining order" from the Second Circuit to "protect[] CJA funds" from being expended on reviewing the documents from the Facebook Warrant. (Def.'s Br., at 10.) As an initial matter, it is not apparent that Defendant has standing to file such a restraining order. Additionally, to the extent that Defendant is essentially seeking an interlocutory appeal of this Court's ruling on the suppression motion, "[a]n interlocutory appeal in a criminal matter is justified only when the right to be vindicated is lost if appellant is made to wait until the entry of a final judgment before appealing. Absent such a circumstance[,] review is not authorized[.]" *United States v. Miller*, 14 F.3d 761, 765 (2d Cir. 1994); *see also United States v. Dhinsa*, 171 F.3d 721, 727 (2d Cir. 1998) ("[O]nly [the government] can challenge the suppression ruling in an interlocutory appeal."). Here, Defendant has not established, or even argued, that he will lose the opportunity to vindicate his Fourth Amendment right if no interlocutory appeal is granted.

#### 2. Severance

Defendant also argues that disclosure of the fruits of the Facebook Warrant should be stayed until his future motion for severance is resolved. (Dkt. 69, at 1-2 ("To the extent that the government may have improperly joined Sharod Liburd [in the Superseding Indictment], it would seem improper to divulge so much of his life to anyone in a case with whom he has not been charged in any overarching conspiracy or other crime.").) The Court rejects this argument. The Court presumes that the government intends to use the evidence obtained from the Facebook Warrant against co-defendants Cooper, Herbert, Washington, and Michael Liburd to the extent it relates the West End Enterprise, regardless of whether Defendant is tried with them or not. Thus,

even if Defendant's case is severed, his co-defendants are entitled to the relevant discovery relating his Facebook pursuant to Federal Rule of Criminal Procedure Rule 16.

## CONCLUSION

For the reasons set forth above, Defendant's motion to suppress is denied in its entirety.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: June 5, 2018
      Brooklyn, New York