UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

          - against -                         **MEMORANDUM & ORDER**
                                                  17-cr-296 (PKC)

SHAROD LIBURD,

                Defendant.
-------------------------------------------------------X

PAMELA K. CHEN, United States District Judge:

Pending before the Court is Defendant Sharod Liburd's ("Defendant" or "Liburd") motion seeking: (1) dismissal of the indictment; (2) severance of his trial from that of his co-defendants; and (3) the Court's recusal from these proceedings. For the reasons discussed herein, Defendant's motion is denied in its entirety.[1]

## BACKGROUND

**I.    Criminal Charges Against Defendant Liburd**

On May 24, 2017, Liburd and two others, Tysheen Cooper ("Cooper") and Gabriale Herbert ("Herbert"), were charged by criminal complaint with Hobbs Act robbery and robbery conspiracy, and possession and brandishing of a firearm in connection with a crime of violence, in violation of Title 18, United States Code, Sections 1951 and 924(c), respectively. (Dkt. 1.) On June 1, 2017, Liburd, Cooper, and Herbert were indicted on those charges. (Dkt. 17.) On November 9, 2017, the grand jury returned a Superseding Indictment that included, in addition to the robbery-related charges against Liburd, Cooper, and Herbert, racketeering and racketeering conspiracy charges against Cooper, Michael Liburd (Sharod's brother), and Maurice Washington

---

[1] The Court announced its decision from the bench at the status conference in this matter on January 18, 2019, indicating that a written decision would soon follow.

("Washington") (another brother), in violation of Title 18, United States Code, Section 1962(d). (Dkt. 32.) The racketeering activity charged in the Superseding Indictment includes: (1) obstruction of justice, witness tampering, Hobbs Act robbery and robbery conspiracy; (2) acts involving state law murder, extortion, and robbery; and (3) narcotics offenses. (*Id.* at ¶¶ 6-9.) Michael Liburd, Cooper, and Washington are also charged with the substantive offenses of murder in aid of racketeering and murder conspiracy, in connection with the murder of Antwon Flowers. (*Id.* at ¶¶ 11-20.)

Although Defendant is not charged in the racketeering or racketeering conspiracy charges, he is alleged to be a member of the West End Enterprise, along with his co-defendants Cooper, Michael Liburd, and Washington. (*Id.* at ¶ 5.) The Superseding Indictment alleges that the West End Enterprise is a gang composed of individuals residing in and around certain apartment complexes located in the western end of the Coney Island neighborhood in Brooklyn, and is an "enterprise" within the meaning of Title 18, United States Code, Section 1961(4), for purposes of the racketeering charges. (*Id.* at ¶ 1-2.) The Superseding Indictment further alleges that the West End Enterprise "constitutes an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise", such as "enriching the members and associates of the enterprise through criminal activity, including . . . robbery[,]" and "preserving and protecting the power, territory and criminal ventures of the enterprise through the use of intimidation, threats of violence and acts of violence, including murder, attempt murder, robbery and assault." (Dkt. 32 at ¶¶ 2-3.) In addition, the West End Enterprise allegedly uses

"robbery as a means of obtaining money" and "to enhance the enterprise's prestige." (*Id*. at ¶ 4(a)-(b).)

## II. *Franks* Hearing

On December 14, 2017, the Honorable Robert M. Levy issued a search warrant for information associated with Liburd's Facebook account (the "Facebook Warrant"). The warrant application was supported by the affidavit of Special Agent Gregory Kies of the Federal Bureau of Investigation (the "Kies Affidavit"). On April 10, 2018, after the government provided Liburd's counsel with a copy of the data received from Facebook in response to the Facebook warrant, Liburd filed a motion to suppress the evidence obtained pursuant to the Facebook Warrant. Liburd's motion argued, among other things, that the Kies Affidavit supporting the Facebook Warrant contained a material misstatement or omission and sought a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). According to Liburd, the Kies Affidavit failed to explain that all of the Facebook posts included in the affidavit were only available to Facebook "friends" of Liburd's account, which was indicated by a "friends only" icon next to the date in each Facebook post. Rather, the affidavit suggested that the Facebook posts were publicly available and thus lawfully obtained by the FBI. Because the Facebook posts included in the affidavit provided key support for Judge Levy's probable cause determination, the Court found it necessary to determine whether the fruits of the warrant should be suppressed under *Franks*.

Over the government's objection, the Court held a *Franks* hearing on May 18, 2018. At the hearing, the Court specified the issues to be addressed through sworn testimony, limiting the scope of questioning to the issue of whether the warrant contained a material misstatement or

omission. (Dkt. 116-1, at ECF[2] 843-44.) The Court allowed the government to call Special Agent Kies as a witness, permitted questioning by the government and defense counsel, asked its own questions of Agent Kies, and heard argument on the merits of suppression. Despite being offered ample opportunity to ask questions and present arguments, defense counsel objected to the hearing procedure and asked only seven questions of Special Agent Kies. (*Id.* at ECF 853-54, 860-62, 866-67.) Based on Special Agent Kies's testimony, the Court determined that any misrepresentation in the application for the Facebook Warrant was not intentional or done with reckless disregard for the truth. (*Id.* at ECF 870.) Accordingly, Liburd's motion to suppress was denied on the record at the hearing and by written Order dated June 5, 2018.

At the close of the hearing, the Court directed defense counsel to proceed to conduct a privacy and relevance review of the evidence produced by the government against Liburd. (*Id.*) Defense counsel purported to object to the entire disclosure, suggested that such a review would violate the Sixth Amendment, and sought to take the issue up on interlocutory appeal to the Second Circuit. (*Id.* at ECF 870-71.) The Court dismissed this objection on the record and advised Defendant to consult with his attorney to ensure that his interests were appropriately safeguarded. (*Id.* at ECF 881.) Relevant to Liburd's recusal motion, the Court engaged in the following colloquy with Liburd and his counsel:

> MS. DOLAN: This is my problem with the CJA. My job is to fight the Government, Your Honor, just to be perfectly clear–
>
> THE COURT: No, no. Your job is not to fight the Government. Your job is to represent your client, his interest[,] as zealously as possible. That is not always about fighting the Government, especially [where as] here the Government is reaching out to you to say tell us if you think there is information that is irrelevant and private and we will consider whether or not we should not disclose that. This is not an instance where you should be fighting the Government in my opinion. You obviously will [choose] whatever strategy you think is best. But I view your goal as representing your client's interest, his interest as

---

[2] "ECF" refers to the pagination generation by the court's CM/ECF docketing system and not the document's internal pagination.

4

best you can. It doesn't mean necessarily picking every legal fight that you think would be appropriate to move a broader agenda forward. Do not use Mr. Liburd's case, I would urge you, simply to prove a point. If it makes sense for him to pursue this strategy you think is best, fine. But this is an individual case. He is not meant to be a battering ram for any broader agenda. That's what I would say to you, Ms. Dolan. So be mindful of that. I say this to you, Mr. Liburd, I think you and your lawyer should have a serious conversation about whether these strategies make sense for you, looking at the merits of your case and the potential evidence that will be produced against you at trial. So don't sacrifice your interest for any greater good. That's all I will tell you.

(Dkt. 116-1, at ECF 880-81.)

Following the *Franks* hearing, Liburd filed the instant motion to dismiss the indictment against him, to sever his trial from that of his co-defendants, and to recuse the Court from further proceedings. (Dkt. 116.)

## DISCUSSION

**I.     Motion to Dismiss Charges Against Defendant**

Liburd seeks to dismiss all charges against him on the basis that the interstate commerce element of the Hobbs Act robbery charges cannot be proven. Liburd argues that according to the complaint, the robbery committed by Liburd and his co-defendants involved the theft of the victim's "personal property" (cash and jewelry) and not an "asset" of the victim's business, and that the jurisdictional element of the Hobbs Act cannot be met "merely [by] showing [the victim's] employment with a company that does business in interstate commerce[.]" (Dkt. 116, at ECF 827-28 (quoting *United States v. Wilkerson*, 361 F.3d 717, 729 (2d Cir. 2004) (internal quotation marks omitted).)[3] The government responds that Liburd's motion asks the Court to improperly resolve "a quintessential factual challenge to the evidence supporting one of the elements of the charged offense" that the jury should decide. (Dkt. 121, at ECF 894.) The Court agrees.

---

[3] Defendant further argues that his 924(c) charge would have to be dismissed once the Hobbs Act robbery charges are dismissed, since they constitute the crimes of violence upon which the 924(c) charge is predicated. (Dkt. 116, at ECF 828.)

5

### A. Legal Standard

As a general rule, "a court cannot test the sufficiency of the government's evidence on a Rule 12(b) motion." *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018). Rather, sufficiency of the evidence is to be determined through trial of the general issue, *e.g.*, "whether the defendant is guilty of the offense charged." *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995). Thus, an information may withstand a Rule 12(b) motion so long as it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

When presented with a Rule 12(b) motion in the context of a Hobbs Act prosecution, courts "do not require that an information 'specify the precise nature of the effect upon interstate commerce that the government intends to prove at trial.'" *United States v. Harris*, 712 F. App'x 108, 109 (2d Cir. 2018) (quoting *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998)). This is because "the requirement of an effect on interstate commerce is itself an element of the offense charged, and the determination of whether the jurisdictional element has been satisfied is part and parcel of the inquiry into the "general issue" of whether the statute has been violated." *Alfonso*, 143 F.3d at 776. Accordingly, it is ordinarily inappropriate for a court to decide whether the government has satisfied the jurisdictional element of the Hobbs Act on a Rule 12(b) motion to dismiss. *Id*. The Second Circuit has made clear that courts may only reach this question when "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial." *Sampson*, 898 F.3d at 282 (2d Cir. 2018) (quoting *Alfonso*, 143 F.3d at 776-77).

### B. Dismissal of the Superseding Indictment is Not Warranted

Despite the high bar set by the Second Circuit for motions under Rule 12(b), Defendant maintains that none of the allegations against him in the superseding indictment can possibly be found to have any effect on interstate commerce. (Dkt. 116, at ECF 828.) Without such support, he argues, the government has failed to allege a violation of the Hobbs Act, and all charges against him should be dismissed. The Court finds no grounds for dismissal of the indictment in Defendant's argument.

As the Second Circuit has stated, there is no requirement "that an indictment alleging a violation of the Hobbs Act must specify the precise nature of the effect upon interstate commerce that the government intends to prove at trial." *Alfonso*, 143 F.3d at 776. Instead, the government "need do little more than to track the language of the statute charged," so that a defendant is aware of the precise crime he is charged with and would be able to plead double jeopardy in a future prosecution based on the same facts. *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). In this case, the superseding indictment contains all the required elements to survive a Rule 12(b) motion to dismiss: it tracks the language of the statute, alleging each element of a Hobbs Act robbery, and identifies the date, location, and specific events that constitute the factual context of the alleged robbery. (Dkt. 32, at ¶¶ 24-25.) Among other things, it alleges that the West End Enterprise is "a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce." (*Id*. ¶ 2.) With respect to the Hobbs Act robbery crimes with which Liburd is charged, the superseding indictment alleges that he, Cooper, and Herbert conspired to, and did, "obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of the proceeds of a merchandising business from John Doe #1 . . . ." (*Id*. ¶¶ 24-25.) The government did not need to provide a full

proffer of the evidence it intends to present in support of its allegations, nor may this Court require the government to make such a presentation before trial. *Sampson*, 898 F.3d at 282.

Nevertheless, Defendant points this Court to dicta in *United States v. Wilkerson*, 361 F.3d 717, 729 (2d Cir. 2004), to support his motion to dismiss the indictment. Despite Defendant's reliance, *Wilkerson* does not require dismissal of the Superseding Indictment. Defendant is correct that *Wilkerson* emphasizes the potential limits of interstate commerce jurisdiction, stating that the Hobbs Act does not reach every robbery committed. *Id.* But in *Wilkerson*, the Second Circuit was evaluating the sufficiency of the evidence supporting the interstate commerce element of a Hobbs Act violation *after it was presented to the jury at trial*. And even the *Wilkerson* panel, despite its reservations about the breadth of interstate commerce jurisdiction, upheld the defendant's conviction where the government presented evidence that the attempted robbery [at issue], if successful, would have depleted the resources available to an unincorporated business for the purchase of landscaping supplies from an in-state retailer—which the Circuit found was sufficient to satisfy the interstate commerce element. Further, each case cited in Wilkerson on the issue of interstate commerce jurisdiction dealt with the sufficiency of evidence presented at trial, not the sufficiency of an indictment on a Rule 12(b) motion. *See United States v. Elias*, 285 F.3d 183, 185-86 (2d Cir. 2002) ("The government undertook to show at trial that the stick-up affected interstate commerce because the grocery store sold beer brewed in Mexico and the Dominican Republic and fruit grown in Florida and California."); *United States v. Jamison*, 299 F.3d 114, 116 (2d Cir. 2002) ("At Jamison's trial, to satisfy the jurisdictional element of the Hobbs Act, . . . the government relied on the effect the robbery would have had on [the victim's] clothing and narcotics businesses."); *United States v. Fabian*, 312 F.3d 550, 555 (2d Cir. 2002) ("Applying the *de minimis* standard to the proof presented at Fabian's trial, we find the government met its

burden."); *United States v. Perrotta*, 313 F.3d 33, 36 (2d Cir. 2002) ("trial proof showed only that he conspired to extort an employee of a company participating in interstate commerce"); *United States v. Silverio*, 335 F.3d 183, 187 (2d Cir. 2003) (evidence demonstrated an "interstate nexus").

By contrast, in this case, the government has yet to make a "detailed presentation of the entirety of the evidence that it would present to a jury." *Alfonso*, 143 F.3d at 777. Instead, the grand jury has made a probable cause finding with respect to all elements of the Hobbs Act robbery crimes, including the interstate commerce element, and the government has indicated that it intends to prove the same at trial beyond a reasonable doubt. (Dkt. 32, at ¶¶ 24-25.) Where, as here, the government has alleged an effect on interstate commerce and a grand jury has made a probable cause finding of such an effect, there is no basis for the Court to make a premature factual determination that the government lacks sufficient evidence to support the allegation.

Accordingly, Defendant's motion to dismiss the charges against him is denied.

## II. Motion to Sever Defendant's Trial

### A. Legal Standard

Federal Rule of Criminal Procedure 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Under Rule 8(b), there is a strong presumption of a joint trial where defendants have been properly charged together in a single indictment, particularly where the crime charged involves a common scheme or plan. *United States v. Ramos*, 346 F. Supp. 2d 567, 569 (S.D.N.Y. 2004). Thus, "a non-frivolous conspiracy charge" is generally sufficient to support joinder. *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988).

If joinder is proper under Rule 8(b), a defendant may move for severance pursuant to Federal Rule of Criminal Procedure 14(a), under which a court may sever a defendant's trial "[i]f

the joinder of offenses or defendants . . . appears to prejudice a defendant." Fed. R. Crim. P. 14(a); *United States v. Spinelli*, 352 F.3d 48, 54 (2d Cir. 2003). Given the "preference in the federal system for joint trials of defendants who are indicted together," severance is generally granted only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 537-39 (1993); *see also United States v. Ventura*, 724 F.2d 305, 312 (2d Cir. 1983) ("We have held repeatedly that, absent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried."); *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) ("[T]he defendant [must] demonstrate[] that the failure to sever [would] cause[] him substantial prejudice in the form of a miscarriage of justice."). Thus, the determination of whether joinder creates a sufficient risk of prejudice to warrant a separate trial "is highly fact-specific and must be evaluated on a case-by-case basis." *United States v. Barret*, 824 F. Supp. 2d 419, 433 (E.D.N.Y. 2011) (citing *Zafiro*, 506 U.S. at 539).

The Second Circuit has long recognized that, as a general matter, separate trials are not warranted merely because the cases against each defendant involve differing levels of culpability and proof. *See Spinelli*, 352 F.3d at 55; *United States v. Carson*, 702 F.2d 351, 366-67 (2d Cir. 1983). Even "joint trials involving defendants who are only marginally involved [yet are tried] alongside those heavily involved are constitutionally permissible." *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993). Though such circumstances may create some amount of potential prejudice, "[t]he risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits." *United States v. Jimenez*, 824 F. Supp. 351, 366 (S.D.N.Y. 1993). To overcome this presumption, the defendant

seeking severance must demonstrate the potential for "prejudice so substantial as to amount to a miscarriage of justice." *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988).

As the Second Circuit explained in affirming the district court's denial of severance in the multi-defendant RICO prosecution in *United States v. DiNome*:

> [In a RICO prosecution,] the government must prove an enterprise and a pattern of racketeering activity as elements of a RICO violation. Proof of these elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless.

*United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992); *accord United States v. James*, 712 F.3d 79, 104 (2d Cir. 2013). Rather, it is presumed that jurors are competent to differentiate among defendants, and "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539; *see also United States v. James*, 712 F.3d 79, 104 (2d Cir. 2013) (affirming denial of severance motion based on supposed prejudicial spillover where allegedly prejudicial evidence of defendant's co-conspirator committing two murders "was [also] relevant to the racketeering charges against [the defendant] to prove the formation, existence, and nature of the racketeering enterprise . . . as well as to show the pattern of racketeering activity"); *United States v. Diaz*, 176 F.3d 52, 104-05 (2d Cir. 1999) (affirming denial of severance in multi-defendant, multi-count RICO action and rejecting argument that "the issues were . . . beyond the jury's competence" due to "the length of trial, the complexity of factual and legal issues, and the large number of defendants, witnesses and crimes charged"); *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989) (affirming denial of severance in twenty-one defendant trial involving numerous criminal counts that "spanned more than seventeen months, produced more than forty-thousand pages of trial transcript, . . . and the testimony of more than 275 witnesses"); *United States v. Bellomo*, 954 F. Supp. 630, 650 (S.D.N.Y. 1997) ("A RICO charge allows the

government to introduce evidence of criminal activities in which a defendant did not participate to prove the enterprise element." (quotation omitted)).

### B. Severance is Unwarranted

Given the denial of Liburd's motion to dismiss the indictment, the Court addresses his request for severance. Liburd argues that he should be tried separately from his co-defendants[4] because a joint trial of all defendants named in the Superseding Indictment will result in prejudicial spillover as to him. (Dkt. 116, at 4-5.) He expects that the government will seek to introduce days, if not weeks, of murder- and gang-related testimony, which, Liburd posits, will cause jurors to think that he may be guilty of similar uncharged crimes. (*Id.* at 5.)

The Court finds this argument unavailing. While Liburd is not charged in many of the crimes alleged against his co-defendants, particularly the more serious crimes of murder and murder conspiracy, this does not create a "serious risk" that his right to a fair trial will be "compromise[d]" so as to warrant severance. *Zafiro*, 506 U.S. at 539. Here, Defendant is alleged to be a member of the enterprise charged as part of the racketeering offenses in the Superseding Indictment, and the enterprise is alleged to use robbery as one of its means of obtain money and enhancing the prestige of the enterprise. (Dkt. 32 at ¶¶ 1-5.) Defendant is therefore properly joined under Rule 8(b) as a defendant in the Superseding Indictment. The mere fact that Defendant is not charged with some of the crimes with which his co-defendants are charged does not justify severance.

---

[4] The Court interprets Defendant's request as only seeking severance of the Hobbs Act robbery-related charges on which he, Cooper, and Herbert have been indicted from the charges brought against Cooper, Washington, and Michael Liburd, and not severance from Cooper or Herbert as to their Hobbs Act robbery-related charges.

*United States v. DeVillio*, 983 F.2d 1185 (2d Cir. 1993), is instructive. In *DeVillio*, the Second Circuit considered a motion for severance by two defendants who had been charged in connection with a single commercial burglary, yet went to trial with co-defendants who were charged with RICO conspiracy and attempted murder charges. *Id.* at 1187. Though the defendants argued that a joint trial would create spillover prejudice due to the inflammatory nature of the charges and evidence against their co-defendants, the Honorable I. Leo Glasser denied their motion for severance. *Id.* at 1192. Instead, Judge Glasser gave an explicit limiting instruction to the jurors that testimony about the attempted murder at issue in the case could not be used as evidence against either of the defendants seeking severance. *Id.* at 1193. The Second Circuit upheld Judge Glasser's denial of the motion for severance, as the defendants had failed to show that a miscarriage of justice had occurred. *Id.*

Severance is also unwarranted on the grounds that much of the evidence introduced at trial will not relate to Defendant. *United States v. Chang An-Lo*, 851 F.2d 547, 556-57 (2d Cir. 1988). Because the substantive charges against Liburd relate to a single robbery, the evidence relating to his charges will be easily separated and distinguished from the evidence against the other defendants at trial, and so the jury will be able to "consider it without any significant spillover effect. *Id.* at 556. Liburd's counsel will have the opportunity to contrast the evidence presented against Liburd with that presented against his co-defendants, arguing effectively to the jury that the bulk of evidence does not relate to the limited crimes with which he is charged. Thus, any prejudice to Liburd from a joint trial is minimal. Furthermore, any *undue* prejudice to Defendant may be addressed through means other than severance, such as *in limine* motions and curative instructions. *Zafiro*, 506 U.S. at 539. By contrast, severance would result in an unnecessary duplication of the government's effort in presenting the case for trial and expenditure of the Court's

13

resources. If severance were granted, the government would still need to present evidence relating to the robbery allegedly committed by Defendant, Cooper, and Herbert in its racketeering case against the other defendants, because the racketeering charges against Liburd's co-defendants are supported by allegations that Liburd was a member of the enterprise and that the enterprise used robbery as one its "means and methods."

While Liburd is correct that, "[w]hen severance is sought, the [Court] must consider whether evidence presented at a joint trial would be admissible at a severed-defendant trial[,]" (Dkt. 116, at 4 (citing *United States v. Casamento*, 887 F.2d 1141, 1153 (2d Cir. 1989)), the fact that much of the evidence that will be admissible at the joint trial in this matter would not be admissible in a trial of Liburd alone is insufficient to overcome the strong presumption that individuals charged in a single indictment should be tried together. The arguments presented by Defendant in favor of severance do not outweigh the benefits of a joint trial in terms of promoting efficiency, avoiding inconsistent verdicts, minimizing inconvenience to witnesses, preserving judicial resources, and avoiding delays. *Zafiro*, 506 U.S. at 537; *Jimenez*, 824 F. Supp. at 366 (finding that interest in "conservation of time, money, and scarce judicial resources" outweighed ); *Chang An-Lo*, 851 F.2d at 556 ("the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance.").

Lastly, after the briefing of his severance motion, at the status conference held on January 18, 2019, Liburd orally advanced another basis of his severance request, namely, the purported delay in trying the case based on ongoing plea negotiations with respect to all Defendants, potential pretrial motions of Liburd's co-Defendants, and the availability of all defense counsel for trial. At the status conference, trial was scheduled for October 2019. This ground, however, is insufficient to justify severance. The Speedy Trial Act mandates that a court, in calculating the time within

14

which the trial of an offense must commence, "shall" exclude a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). Accordingly, "cases involving multiple defendants are governed by a single speedy trial clock.," *United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986), and speedy trial concerns do not present a "standalone basis" for the severance of an individual defendant's trial, *United States v. Curanovic*, 17-CR-404 (KAM), 2017 WL 4402452, at *2 (E.D.N.Y. 2017). *Accord United States v. Muyet*, 225 F.3d 647, 2000 WL 1275925, at *4 (2d Cir. 2000) ("Any delay attributable to one defendant applies to all codefendants."). This rule reflects congressional intent "to make sure that [the Speedy Trial Act] does not alter the present rules on severance of codefendants." *Pena*, 793 F.2d at 489 (citing S. Rep. No. 1021, 93d Cong., 2d Sess. 38 (1974)). As discussed above, the Court finds that Defendant has failed to demonstrate under current doctrine that severance of his trial would outweigh the systemic benefits of a joint trial in this complex case.

Accordingly, Liburd's motion to sever his trial is denied.

### III. Recusal Motion

The final issue before the Court is Defendant's motion for the Court to recuse itself from these proceedings. In support of recusal, Defendant argues that, based on the May 18, 2018 *Franks* hearing, the Court has demonstrated bias against Defendant's counsel or given the appearance of bias in favor of the government. Defendant's recusal argument focuses on three aspects of the *Franks* proceeding: (1) the Court's alleged assistance to the government on remedying purported defects in the Kies Affidavit that supported the Facebook Warrant; (2) the Court's direct questioning of FBI Agent Kies at the *Franks* hearing; and (3) the Court's comments to Defendant at the conclusion of the hearing regarding his counsel's advocacy and strategy in this case.

15

### A. Legal Standard

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Subsection (a) establishes "an objective standard designed to promote public confidence in the impartiality of the judicial process," requiring a judge to consider whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). The Second Circuit has held that an objective observer would entertain such doubts when a judge expresses a personal bias concerning the outcome of the case at issue. *United States v. Diaz*, 797 F.2d 99, 100 (2d Cir.1986) (per curiam) (requiring reassignment where a district judge corresponded with the United States Attorney and one of his Senators and suggested that "appropriate legislation could be introduced to remedy the situation" in a case he presided over). Recusal is also warranted when a judge has a direct personal or fiduciary interest in the outcome of the case, even when the judge is unaware of that interest at the relevant times. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 861 (1988) (finding that the failure to recuse due to a memory lapse was reversible error). By contrast, however, disqualification is not required when a recusal motion is merely based on remote, contingent, indirect, or speculative interests. *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir.1988).

Importantly, a key factor in any recusal analysis is whether the perception of impartiality stems from an extrajudicial source, rather than from the course of judicial proceedings. *Liteky v. United States*, 510 U.S. 540, 554 (1994). *ISC Holding AG v. Nobel Biocare Finance AG*, 688 F.3d 98, 107-08 (2d Cir. 2012). As the Second Circuit has held,

> recusal is not warranted where the only challenged conduct "consist[s] of judicial rulings, routine trial administration efforts, and ordinary admonishments . . . to counsel and to

witnesses," where the conduct occurs during judicial proceedings, and where the judge "neither (1) relie[s] upon [certain] knowledge acquired outside such proceedings nor (2) display[s] deep-seated and unequivocal antagonism that would render fair judgment impossible."

*SEC v. Razmilovic*, 738 F.3d 14, 29-30 (2d Cir. 2013) (quoting *Liteky*, 510 U.S. at 556). But even the derivation of an opinion from an extrajudicial source is not a *sufficient* condition for recusal, as judges are obviously permitted to acquire some opinions, *e.g.*, a view of the law or legal ethics, from experiences beyond the context of judicial proceedings. Thus, a judge may be critical or disapproving of counsel based on opinions acquired in the course of proceedings and informed by general legal experience, so long as the judge's remarks do not indicate irrepressible favoritism or antagonism. See *Liteky,* 510 U.S. at 555. "Moreover, where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001). A judge bears an equal obligation not to recuse when recusal is unwarranted as she bears to recuse when her partiality may be reasonably questioned. *Drexel Burnham Lambert*, 861 F.2d at 1312.

### B.     There is No Basis for Recusal

In light of the objective standard established by 28 U.S.C. § 455(a) and judicial precedent interpreting it, Defendant's argument for recusal is meritless. There simply is no basis on which an objective, disinterested observer could reasonably question the Court's impartiality.

First, Defendant's motion grossly mischaracterizes the nature and purpose of the Court's discussion of the Kies Affidavit at the outset of the *Franks* hearing on May 18, 2018, alleging that the Court sought to bolster the government's position at the hearing by providing education and instruction to the prosecution. (Dkt. 116, at ECF 829.) As is clear from the complete transcript of the conference, however, the Court merely prefaced the hearing by outlining for all parties present, with specificity, the problems that it saw in the Kies Affidavit that justified the Court's decision to

grant Defendant's request for a *Franks* hearing, (Dkt. 116-1, at ECF 843-53), which even Defendant notes is an "exceedingly rare remedy," (*Id.* at ECF 830.). The Court directed the prosecutor's attention to the representations in paragraph seven and footnote one of the Kies Affidavit, which contained suggestions that the images viewed by Agent Kies had been publicly available and explained that the purpose of the *Franks* hearing would be to explain why the Kies Affidavit did not clarify the non-public nature of certain images. (*Id.* at ECF 846-49.) This discussion did not "skew" the hearing toward the government; rather, it merely focused the parties on the nature of the Court's inquiry, an entirely appropriate action.

Second, Defendant similarly mischaracterizes the Court's questioning of Agent Kies at the hearing regarding his affidavit by suggesting that the Court "seized control" of the witness examination and attempted to somehow guide or coach Agent Kies's responses so as to sustain the defense challenge. (*Id.* at ECF 831-36.) The plain record dispels any such notion. The record makes clear that the Court was simply seeking to obtain the information it needed to determine, under *Franks*, whether the omission in the affidavit regarding the source of the key images was intentional or deliberate and whether Agent Kies gave truthful responses. (*Id.* at 863-66.) Indeed, the Court's questioning was necessitated, in part, by defense counsel's limited questioning of Agent Kies. (*Id.* at 860-62.) Based on its own questioning, the Court found Agent Kies's responses were credible and reflected a high degree of candor in that they did not entirely bolster the government's position. There can be no serious suggestion that the Court acted inappropriately in eliciting this critical information from the only witness at the *Franks* hearing.

Third, there was nothing improper about the Court's remarks to both Defendant and his counsel at the conclusion of the *Franks* hearing. Indeed, as defense counsel notes, the Court has an obligation to protect Defendant's right to unconflicted counsel, which includes ensuring that

defense counsel is acting based on Defendant's interests, rather than pursuing the counsel's own or separate agendas. At the close of the hearing, when directed by the Court to conduct a privacy review of the evidence produced by the government in discovery, Defendant's counsel refused to engage in that review and sought to litigate collateral issues about CJA responsibilities and fees. (Dkt. 116-1, at ECF 870-80.) The Court's comments at the hearing—namely, that defense counsel's job is not to "fight the government," but to represent her client's interests, and that Defendant should "have a serious conversation" with his defense counsel about whether her legal strategies were the best ones to safeguard his interests—were consonant with the Court's duty to ensure that Defendant's Sixth Amendment rights are respected. (*See id.* at ECF 880-81.) Furthermore, it bears noting that at the beginning of the *Franks* hearing, in response to Defendant's indication that he wished to replace current defense counsel, Ms. Dolan, with a new attorney, the Court advised Defendant that Ms. Dolan was "extremely competent." (*Id.* at ECF 842.) Thus, any suggestion that the Court's remarks were an attempt to undermine the defense's attorney-client relationship and strategy—as opposed to merely fulfilling the Court's duty to ensure that defense counsel was representing the Defendant's interests when she refused to review the government's disclosure for irrelevance or privacy issues—is directly contradicted by the plain record of the hearing.

Accordingly, the motion for recusal is denied.

## CONCLUSION

For the foregoing reasons, the Court denies in their entirety Defendant's motions to dismiss the indictment, to sever his trial from that of his co-defendants, and to recuse this Court from these proceedings.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 24, 2019
      Brooklyn, New York